UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01104-JLK-MEH

Gerald Maestas,

Plaintiff,

v.

City and County of Denver,

Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Gerald Maestas, and for his Complaint states as follows:

### I.  INTRODUCTION

1.   This suit is brought by a former male employee of the City and County of Denver ("Denver") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), and 42 U.S.C. § 1981 and the Colorado Anti-Discrimination Act ("CADA").  Mr. Maestas was discriminated against with regard to the terms and conditions of his employment on the basis of his perceived sexual orientation (homosexual), and national origin (Hispanic), was subjected to harassment and a hostile work environment and was retaliated against for engaging in protected conduct under Title VII, 42 U.S.C. § 1981 and the CADA. At all relevant times, all employees were acting within the course and scope of their employment with and as agents of the City and County of Denver.

### II.  JURISDICTION AND VENUE

2. This action is authorized and instituted pursuant to Title VII, 42 U.S.C. § 1981, and the ADEA.

3. Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as all the employment practices alleged to be unlawful were committed within the State of Colorado.

4. Plaintiff timely filed a charge of discrimination in or about July, 2019 with the Equal Employment Opportunity Commission.

5. Plaintiff received a Dismissal and Notice of Rights dated September 28, 2020 and commenced this action within ninety (90) days of receipt of the notice.

6. Injunctive relief is sought pursuant to applicable law.

7. Costs and attorney's fees may be awarded pursuant to applicable statutes and regulations.

### III.   PARTIES

8. Plaintiff is a resident of the State of Colorado.  He was hired by Denver on or about February 13, 2006 as a Senior Accountant in the Denver Police Department.

9. Plaintiff's national origin is Hispanic, and he is within the protected class of persons under Title VII and 42 U.S.C. 1981.

10. Defendant Denver is a statutory local governmental entity.

11. Since in or about February 2006, Defendant has been Plaintiff's "employer" as defined by applicable law.

12. Denver employs 500 or more persons.

13. Plaintiff has satisfied all conditions precedent to bringing this action. He

filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and has otherwise exhausted his administrative remedies within the meaning of Title VII of the Civil Rights Act of 1964.

14. At all times relevant, Plaintiff was qualified for his position.

15. At all times relevant, Plaintiff had been performing satisfactorily.

## IV. GENERAL ALLEGATIONS

16. After a non-Hispanic female coworker "female coworker" was hired by Denver as a Grants Management Analyst, she maintained an on-going pattern and practice of harassment, hostile work environment and retaliation against Mr. Maestas on the basis of his national origin, perceived sexual orientation (homosexual) and gender.

17. The harassment and hostile work environment to which Mr. Maestas was subjected based upon his national origin included:

   a. Unwelcome comments about Mr. Maestas national origin, stating, "You're a Mexican."  When Mr. Maestas corrected the female coworker and informed her that his family was from Spain and not Mexico. The female coworker was quick to respond, "You're still a Mexican." while laughing.

   b. The female coworker referred to Mr. Maestas as a "bean counter" placing a significant emphasis on the word "bean." She would repeatedly state words like You're a Mexican accountant who is a "bean" counter do you get it? while laughing.

   c. The female coworker treated Mr. Maestas in a demeaning and derogatory manner.

18. The harassment and hostile work environment to which Mr. Maestas was subjected based upon his gender (male) and perceived sexual orientation (homosexual) included:

a. The female coworker subjected Mr. Maestas to unwelcome comments about his perceived sexual orientation. The female coworker asked him if he thought her butt was too big, when he refused to comment on her body, she said it was because he was "gay."

b. The female coworker would frequently come into Mr. Maestas office and place her feet on his desk. On one occasion, the female coworker entered Mr. Maestas office and put her feet on his desk while wearing a dress, thereby exposing herself. When Mr. Maestas asked her to sit appropriately, her response was that he was insisting that she do so only because he was gay.

c. Another time the female coworker would frequently grab labels and place the labels on her breasts and stated that she needed to "center the label on [her] nipple." She would ask him to comment on their size. Mr. Maestas responded that he would not look or comment and that what the female coworker was doing was inappropriate. In response, the female coworker stated, as she commonly did, "You don't want to say anything because you're gay."

d. On another occasion, the female coworker attempted to get Mr. Maestas attention while he was dealing with a work matter and began to draw a picture of a penis. When he refused to engage with her, the female coworker began to add detail to the drawing. She stated it was her boyfriend's penis, described the way it looked and why it looked that way because of a botched circumcision, and then proceeded to wave the paper in Mr. Maestas face.

e. The female coworker repeatedly tried to get Mr. Maestas to disclose what she perceived to be his sexual orientation. During one such conversation, the female

- 4 -

coworker stated words to the effect that she understands he grew up in the late 70's and early 80's and he did not want to tell anyone that he was gay because everyone was afraid of AIDS.  She stated, it is not like that anymore. You should just admit that you're gay. Finally, after having heard enough of the female coworker's gay comments about him, Mr. Maestas asked the female coworker that since she thought that he was gay, what did she think of gay men? The female coworker responded, "I f**ing hate gay men. Gay men only think about f** an a**, playing with a f** a**, only think about an a**. It's too much f** a** to deal with. I f**ing hate them". (Profanity modified).

f.  The female coworker made many lesbian comments in Mr. Maestas presence and referred to one of the women in the office as a lesbian lumberjack.

g.  On several occasions the female coworker told Mr. Maestas that she would prefer to see a woman in his position "because women are better leaders," "better decision makers," and she "works better with women."

h.  Mr. Maestas was blamed for showing videos depicting furry parties, which portrayed people in animal costumes having sex.  In fact, it was the female coworker who had shown Mr. Maestas a video of furry parties, and he refused to watch, looked away, and told her that he did not want to see that.

19.  Mr. Maestas repeatedly told the female coworker that her comments about his national origin, perceived sexual orientation and age were personally offensive to him however she refused to stop.

20.  In September 2018, Mr. Maestas tried to discuss the female coworker's comments with the Finance Director who was the supervisor for both the female coworker and Mr.

Maestas. After hearing some of his complaints, the Finance Director stopped Mr. Maestas from reporting further and stated that she "did not want to hear any more" and walked away.  In October 2018 Mr. Maestas again stated to the Finance Director, that he needed to discuss the female coworker's inappropriate behavior with her.  The Finance Director walked out of his office without acknowledging Mr. Maestas' concern.

21. In October 2018, Mr. Maestas learned that the female coworker had obtained salary information for other employees. She began sharing other co-workers salary information throughout the office.  This made the other employees uncomfortable.

22. On or about November 1, 2018, Mr. Maestas was placed on investigatory leave.

23. Over a month later, on or about December 4, 2018, Mr. Maestas had a meeting with AH (HR Manager) and BL (Employee Relations Specialist) and learned that the female coworker had filed a complaint against him.

24. Mr. Maestas informed Ms. AH and Ms. BL about the female coworker's harassing and hostile comments to him and provided them with witness information and informed them that he felt the female coworker's complaint was in retaliation for his reporting her behavior.

25. On or about December 31, 2018, Mr. Maestas received a pre-disciplinary letter (dated on or about December 27, 2018), which, among other things, falsely stated that Mr. Maestas had sold illicit materials, a false allegation which had not been previously mentioned.

26. On or about January 7, 2019, Mr. Maestas attended a pre-disciplinary meeting and asked Ms. AH and Ms. BL why his complaints about the female coworker's sexual orientation-based comments were not mentioned in the December 27, 2018 letter. Ms.

AH said she did not recall him discussing any "gay" comments even though she had Mr. Maestas sign a statement regarding the same. During this meeting, Mr. Maestas also brought up the comments the female coworker made about his national origin.

27.     The Defendant further discriminated against Mr. Maestas by inappropriately taking disciplinary action against him while the investigation was ongoing.  Mr. Maestas was suspended with pay on November 1, 2018.  On December 4, 2018 Ms. AH informed Mr. Maestas that Denver was modifying his work processes, and on December 12, 2018 Ms. AH informed Mr. Maestas that he would be disciplined.   This action was taken against Mr. Maestas during the pendency of the investigation, and prior to the pre-disciplinary meeting held on January 7, 2019, and prior to receiving the letter dated December 27, 2018 informing Mr. Maestas of the date of the pre-disciplinary meeting.  It was at the pre-disciplinary meeting that Mr. Maestas was first permitted to respond to the allegations against him.  On November 2, 2018 Mr. Maestas was informed by a representative of the Defendant's Board of Ethics, that pursuant to Denver's policies and ethical rules, it would be retaliation for any disciplinary action to be taken against hm prior to the pre-disciplinary meeting.  On December 12, 2018, Mr. Brand of the Hearing Office also provided Mr. Maestas the same information as the Board of Ethics.

28.     On or about January 24, 2019, Mr. Maestas was terminated. Upon information and belief, the Defendant failed to interview Mr. Maestas' witnesses.  The termination letter still included a reference to the false allegations. Mr. Maestas was terminated approximately 19 months and 5 days from his being entitled to receive full retirement and benefits.

29.     The Defendant knowingly tolerated the female coworker's treatment of Mr. Maestas and failed to take prompt or effective remedial action nor attempt to remedy the situation. Mr. Maestas informed Ms. AH and Ms. BL of Human Resources that the female coworker had told Mr. Maestas that she would file an HR complaint against any man who tried to get her in trouble to teach him a lesson and that she had done this before, and that HR would believe her because she was a female.  In attempting to schedule a dispute resolution meeting, Mr. Maestas learned, upon information and belief, that the female coworker may have done the same thing to another employee.  Upon information and belief, the Defendant would not allow a dispute resolution meeting to take place.

30.     Mr. Maestas was discriminated against and was subjected to harassment and a hostile work environment on the basis of his gender, perceived sexual orientation and national origin, and was retaliated against, including false allegations being made against him; essentially all of the female non-Hispanic coworker's false statements were believed whereas Mr. Maestas truthful statements were not believed; there was a failure to properly investigate his complaints, and he was terminated in retaliation for complaining about the above-described unlawful conduct.  As a result of the Defendant's unlawful conduct, Mr. Maestas has suffered economic and non-economic harm and damage.

## FIRST CLAIM FOR RELIEF

### (National origin Discrimination in Violation of Title VII)

31.     Plaintiff hereby incorporates all other allegations of this Complaint and Jury Demand as though fully incorporated herein.

32.     Denver knowingly and intentionally discriminated against Mr. Maestas and engaged in harassment against Plaintiff and subjected him to a hostile work environment

because of his national origin, including as described in the foregoing paragraphs of his complaint.

33. Plaintiff has suffered and will continue to suffer economic losses due to the discriminatory conduct set forth above, as well as non-economic injuries, including loss of enjoyment of life, and other emotional harm and distress.

## SECOND CLAIM FOR RELIEF

### (Retaliation in Violation of Title VII)

34. Plaintiff hereby incorporates all other allegations of this Complaint and Jury Demand as though fully incorporated herein.

35. Plaintiff engaged in statutorily protected expression by opposing Denver's unlawful employment practices as described herein.

36. Denver knowingly and intentionally retaliated against Plaintiff because of opposition to unlawful employment practices described herein.

37. Plaintiff has suffered and will continue to suffer economic losses due to the retaliatory conduct set forth herein, as well as non-economic injuries, including loss of enjoyment of life and other emotional harm and distress.

## THIRD CLAIM FOR RELIEF

### (42 U.S.C. 1981)

38. Plaintiff hereby incorporates all other allegations of this Complaint and Jury Demand as though fully incorporated herein.

39. Denver engaged in purposeful and intentional discrimination and retaliation against the Plaintiff on the basis of his national origin (Hispanic), including as a result of Plaintiff opposing unlawful discrimination.

40. Plaintiff was subjected to harassment and a hostile work environment and retaliation as a result of his national origin (Hispanic) and Plaintiff's opposing unlawful discrimination, including as outlined herein-above. A determining and motivating factor in the Denver's treatment of Plaintiff was his national origin (Hispanic), and as a result, Denver deprived and continues to deprive Plaintiff of the equal benefit of the law and of the same right to make and enforce contracts as is enjoyed by Non-Hispanic citizens, in violation of 42 U.S.C. § 1981.

41. Non-Hispanic employees of Denver were not subjected to the same treatment as Plaintiff.

42. Denver knowingly and intentionally engaged in a pattern and practice of national origin-based harassment, discrimination, and retaliation against Plaintiff. The acts of the Denver are in willful, wanton and/or reckless disregard of the rights or sensibilities of Plaintiff, and have caused harm, damage, and great suffering to Plaintiff.

43. Plaintiff seeks to recover compensatory and such punitive damages as may be lawfully recoverable. Plaintiff also seeks to recover past and future economic/pecuniary damages and losses, including lost wages, lost benefits and perquisites of employment, harm and damage to his reputation, career and future, emotional pain, suffering, embarrassment, shame, humiliation, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, including as outlined elsewhere herein. Plaintiff is also seeking attorney's fees, costs, interest, expert witness fees and costs, and all other compensation and amounts as are lawfully recoverable.

## FOURTH CLAIM FOR RELIEF

**(Gender and Sexual Orientation Violations of Title VII)**

44. Plaintiff hereby incorporates all other allegations of this Complaint and Jury Demand as though fully incorporated herein.

45. Denver engaged in purposeful and intentional discrimination and retaliation against the Plaintiff on the basis of his gender and perceived sexual orientation, including as a result of Plaintiff opposing unlawful discrimination.

46. Plaintiff was subjected to harassment and a hostile work environment and retaliation as a result of his gender (male) and perceived sexual orientation, and Plaintiff's opposing unlawful discrimination, including as outlined herein-above. A determining and motivating factor in the Denver's treatment of Plaintiff was his gender and perceived sexual orientation, and as a result, Denver deprived Plaintiff of his rights and entitlements pursuant to Title VII.

47. Female employees of Denver were not subjected to the same treatment as Plaintiff.

48. Denver knowingly and intentionally engaged in a pattern and practice of gender and perceived sexual orientation harassment, discrimination, and retaliation against Plaintiff. The acts of the Denver are in willful, wanton and/or reckless disregard of the rights or sensibilities of Plaintiff, and have caused harm, damage, and great suffering to Plaintiff.

49. Plaintiff seeks to recover compensatory and such punitive damages as may be lawfully recoverable. Plaintiff also seeks to recover past and future economic/pecuniary damages and losses, including lost wages, lost benefits and perquisites of employment, harm and damage to his reputation, career and future, emotional pain, suffering, embarrassment, shame, humiliation, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, including as outlined elsewhere herein. Plaintiff is

also seeking attorney's fees, costs, interest, expert witness fees and costs, and all other compensation and amounts as are lawfully recoverable.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

a. Enjoin Defendant from engaging in discriminatory conduct barred by Federal law and place him in an appropriate position with the Denver as if he had not been wrongfully terminated, with full seniority, benefits and perquisites of employment; or alternatively, that Plaintiff be awarded appropriate front pay and benefits through retirement, and require sensitivity training and the appointment of an independent third party to undertake education and training, including sensitivity training, relative to anti-harassment and discrimination, and that this Court undertake to monitor, or appoint an independent third party to monitor the future EEO compliance of the Defendant; and order other appropriate equitable relief including injunctive and/or declaratory relief;

b. Compensatory and consequential economic and non-economic damages, including back pay and benefits and perquisites of employment, and in the event the Defendant should refuse to hire Plaintiff, for appropriate front pay;

c. Punitive and/or liquidated damages as may be allowed by law;

d. Pre-judgment and post-judgment interest at the highest lawful rate;

e. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

f.	Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 22nd day of December, 2020.

Andrew T. Brake, P.C.

By: s/Andrew T. Brake
Andrew T. Brake, Reg. No. 12021
3615 S. Tamarac Dr., Suite 200
Denver, CO  80237
303-806-9000

**Plaintiff's Address:**

C/O Andrew T. Brake
3615 S. Tamarac Dr., Suite 200
Denver, CO  80237
303-806-9000